UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:                                                                    Chapter 11 Bankruptcy

Gerald Trooien,                                                           Case No. 10-37695

                          Debtor.

_____

Gerald Trooien,

                    Plaintiff,
                                                                          Adv. No. 10-03227
          v.

General Electric Capital Corporation and
GECPAC Investment II, Inc.

                    Defendants.

---

**PLAINTIFF'S NOTICE OF HEARING AND MOTION
FOR SUMMARY JUDGMENT**

---

TO:     Defendants General Electric Capital Corporation and GECPAC Investment II, Inc., by
        and through their attorneys Paul L. Ratelle and Megan M. Kennedy, Fabyanske, Westra
        & Hart, P.A., 800 LaSalle Avenue, Suite 1900, Minneapolis, Minnesota 55402.

        1.      Plaintiff Gerald Trooien ("Plaintiff" or "Debtor") moves the Court for the relief

requested below and gives notice of a hearing.

        2.      The Court will hold a hearing on this motion at a date and time to be determined,

in Courtroom 7 West, United States Courthouse, 300 South Fourth Street, Minneapolis,

Minnesota.

        3.      Any response to this motion must be filed and served no later than March 4, 2011.

        4.      This Court has jurisdiction over the parties and the subject matter of this

adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334 because it arises in and is related to

the above-captioned bankruptcy case pending in the United States Bankruptcy Court for the

District of Minnesota.

5.      This adversary proceeding is a core proceeding pursuant to 28 U.S.C.

§ 157(b)(2)(F).

6.      The petition commencing the above-captioned chapter 11 case was filed on

October 25, 2010, and the Complaint commencing the above-captioned adversary proceeding

was filed on November 1, 2010.

7.      This motion arises under 11 U.S.C. §§ 502(d), 547, 550, and 551, Federal Rule of

Bankruptcy Procedure 7056, and Federal Rule of Civil Procedure 56.  This motion is filed

pursuant to Federal Rule of Bankruptcy Procedure 7007 and Local Rules 7007-1 and 9013-1

through 9013-2.  Plaintiff requests summary judgment ordering that the creation of the lien

against the Debtor's ownership interests in certain entities pursuant to an Order dated July 28,

2010 in the United States District Court for the District of Minnesota [docket no. 44 in case no.

09-cv-01200] (the "Transfer") is avoided pursuant to 11 U.S.C. § 547, and that, if necessary in

addition to the lien being automatically preserved for the benefit of the estate under 11 U.S.C. §

551, the lien is recoverable pursuant to 11 U.S.C. § 550 and that Defendants' claims be

disallowed pursuant to 11 U.S.C. § 502(d).

## FACTS

8.      The facts supporting this motion are not disputed and are set out in the

accompanying memorandum of law.

## **GROUNDS FOR RELIEF**

9.      A party is entitled to summary judgment when there is "no genuine issue of

material fact" and the undisputed facts warrant judgment for the moving party as a matter of law.

Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).

10.      Summary judgment is appropriate under 11 U.S.C. § 547(b) because there is no

genuine issue of material fact as to whether Plaintiff, as the debtor-in-possession, may avoid the

Transfer to Defendants.

11.      If relief under 11 U.S.C. § 550 is necessary, summary judgment is appropriate

because there is no genuine issue of material fact as to whether the Transfer is avoidable and

whether the Defendants were the initial transferee of the Transfer.

12.      If relief under 11 U.S.C. § 502(d) is necessary, summary judgment is appropriate

because  there is no genuine issue of material fact as to whether the Defendants are the transferee

of a transfer avoidable under section 547 and whether the Defendants have turned over the

transferred property.

13.      In accordance with Local Rules 7007-1 and 9013-2, this motion is accompanied

by a memorandum of law, the unsworn declarations of Sarah Gibbs and Douglas W. Kassebaum,

proof of service, and a proposed order.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment as follows:

1.      For avoidance of the Transfer;

2.      If necessary, for recovery of the transferred property and for disallowance of the

Defendants' claims;

3.      For all costs under applicable law; and

4.      For such other and further relief as this Court deems just and equitable.

Dated:  February 22, 2011

*/s/ Cynthia A. Moyer*

Cynthia A. Moyer (#211229)
Sarah M. Gibbs (#390238)
**FREDRIKSON & BYRON, P.A.**
200 South Sixth Street, Suite 4000
Minneapolis, MN 55402-1425
Tel. (612) 492-7000
Fax (612) 492-7077
jbaillie@fredlaw.com
cmoyer@fredlaw.com
sgibbs@fredlaw.com

ATTORNEYS FOR PLAINTIFF

4852352

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: | Chapter 11 Bankruptcy |
| Gerald Trooien, | Case No. 10-37695 |
| Debtor. | |

Gerald Trooien,

            Plaintiff,

      v.                                                          Adv. No. 10-03227

General Electric Capital Corporation and
GECPAC Investment II, Inc.

            Defendants.

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HIS
MOTION FOR SUMMARY JUDGMENT**

## <u>INTRODUCTION</u>

Plaintiff Gerald Trooien (hereafter "Trooien" or the "Debtor") submits this memorandum in support of his motion for summary judgment in the above-captioned adversary proceeding. As discussed below, there are no facts in dispute. Defendants General Electric Capital Corporation and GECPAC Investment II, Inc. (collectively "GE") received a transfer within the 90 day preference period, during which time the Debtor was insolvent, and which transfer would allow GE to receive more than it would in a chapter 7 liquidation. Thus, the transfer must be set aside as an avoidable preference and preserved for the benefit of the estate.

## BACKGROUND INFORMATION[1]

### I.   DEBTOR'S ANTECEDENT DEBT TO GE.

GE's claims against the Debtor arise from the following transaction. In or around November 2006, the Debtor personally guaranteed certain obligations that JLT Aircraft Holding Company, LLC ("JLT Aircraft") and Aircraft No. 1074 Company, LLC ("No. 1074") owed to GE (the "Guarantee"). See Unsworn Declaration of Sarah Gibbs in Support of Motion for Summary Judgment (hereinafter, "Gibbs Decl."), Ex. A (Order dated December 18, 2009 [docket no. 24 in case number 09-cv-01200 in the United States District Court for the District of Minnesota]), pp. 2-3. The Debtor's guarantee was unsecured. See id., Ex. A, pp. 2-3.

In or around April 2009, JLT Aircraft and No. 1074 defaulted on their obligations to GE. Id., Ex. A, p. 3. Thereafter, in May 2009, GE commenced an action in the United States District Court for the District of Minnesota, Case No. 09-cv-01200 (JNE/AJB) (the "District Court Case"), against JLT Aircraft, and No. 1074, and the Debtor. Id., Ex. A, p. 4. In the District Court Case, GE sought to collect the amounts owed by JLT Aircraft and No. 1074, and guaranteed by the Debtor (the "GE Debt"). See Gibbs Decl., Ex. B (Order dated July 28, 2010 [docket no. 44 in the District Court Case]), p. 1.

On December 21, 2009, judgment was entered in the District Court Case in favor of GE, holding that the Debtor was jointly and severally liable with JLT Aircraft and No. 1074 to GE for approximately $18 million plus interest (the "GE Judgment"). Gibbs Decl., Ex. C (Judgment dated December 21, 2009 [docket no. 25 in the District Court Case]). The only assets of JLT Aircraft and No. 1074 were the airplanes securing the obligations to GE. Those airplanes have been turned over to GE, so JLT Aircraft and No. 1074 have no remaining assets. See Gibbs Aff.,

---

[1] This information is supplementary to the undisputed facts relied upon for this motion, which are set forth in a separate section below.

Ex. D (Debtor's Bankruptcy Schedules [docket no. 38 in the Debtor's bankruptcy proceeding,

case no. 10-37695 (hereinafter, "Debtor's Bankruptcy Case")]), pp. 72 & 75.  Assuming the two

airplanes net less than $10 million, the amount owed to GE pursuant to the GE Judgment will be

in excess of $9 million.

## II.     GE OBTAINED THE CHARGING ORDER, WHICH RESULTED IN THE AVOIDABLE TRANSFER.

After the GE Judgment was entered, GE took action to collect on the GE Judgment by

making a motion in the District Court Case requesting that the court enter a charging order

pursuant to Minn. Stat. §§ 321.0703(e), 322B.32, and 323A.0504(e) and Del. Code Ann. Tit. 6,

§ 18-703 against the ownership interests of the Debtor in certain entities (the "Charging Order

Entities").  See generally Gibbs Decl., Ex. B (Order dated July 28, 2010 in the District Court

Case).  Specifically, GE requested the entry of an order:

> subjecting the individual interests of [Trooien] in the [Charging Order] Entities to
> an encumbrance, lien, and charging order in favor of and for the benefit of [GE]
> for payment of the [GE] Judgment and causing [GE] to . . . be deemed a 'lien
> creditor' . . . with respect to Trooien's interests in these [Charging Order] Entities.

Gibbs Decl., Ex. E (GE's Memorandum of Law in support of its Motion for Charging Order

[docket no. 30 in District Court Case] (hereinafter "GE Memo for Charging Order")), p. 8.

Pursuant to GE's motion, the court entered an order in the District Court Case dated July

28, 2010 (the "Charging Order"), in which it ordered that:

> The individual interests of Gerald L. Trooien in the [Charging Order]
> Entities are subjected to an encumbrance, a lien, and a charging order in favor of
> and for the benefit of [GE] for payment of the Judgment dated December 21,
> 2009.  [GE], having acquired a lien against Trooien's interests in the [Charging
> Order] Entities pursuant to this Order, [is] deemed a 'lien creditor' . . . with
> respect to Trooien's interests in the [Charging Order] Entities.

Gibbs Decl., Ex. B (Charging Order), p. 8.  Thus, as a result of the Charging Order, GE

"acquired a lien against Trooien's interests" in the Charging Order Entities (the "Charging Order

Lien"). <u>Id.</u>, Ex. B, p. 8. The creation of the Charging Order Lien by the Charging Order will be referred to herein as the "Transfer."

### III. GE'S DISCOVERY RESPONSES DO NOT REVEAL ANY GENUINE ISSUES OF MATERIAL FACT, AND HAVE NOT BEEN SUPPLEMENTED.

Pursuant to this Court's Scheduling Order and Order for Trial in this adversary proceeding, the Debtor served discovery requests on GE. Gibbs Decl., ¶ 7. Thereafter, GE served Debtor with its responses. <u>Id.</u>, ¶ 7; Ex. F (Defendant's [sic] Response to Plaintiff's Interrogatories, Requests for Production of Documents, and Requests for Admission (Set I) (hereinafter "GE's Discovery Responses")). GE wove two related themes throughout its Discovery Responses. First, GE repeatedly implied that it was unable to respond to certain discovery requests because, it asserted, the term "Transfers" as used in the Complaint was "vague and ambiguous, inasmuch as the alleged Transfers are not sufficiently defined." <u>See</u> Gibbs Decl., Ex. F (GE's Responses to Interrogatory Nos. 10, 11, 12, 13, 14, 15, 16, 17, 18, & 19), pp. 9-14. The Complaint in this adversary action defined "Transfers" as "[t]he liens granted in the Charging Order." Complaint [docket no. 1], ¶ 12. Thus, it appears that GE may not agree with the Debtor's definition in the Complaint of the term "Transfers," or the Debtor's definition and use herein of the term "Transfer," and has used that disagreement to support its refusal to fully respond to the Debtor's discovery.

Second, it appears that GE is quibbling about this definition because GE does not want to admit that its encumbrances on the Charging Order Entities were created by the Charging Order, which was entered within the 90-day preference period. In fact—despite the Charging Order's clear statement that GE "acquired a lien against Trooien's interests in the [Charging Order] Entities pursuant to this Order," Gibbs Decl., Ex. B (Charging Order), p. 8, and GE's own admission that the Charging Order "placed a lien on the Debtor's ownership interests in certain

entities," GE's Answer [docket no. 4], ¶ 12—GE makes multiple references in its discovery responses to a vague belief that "[t]he encumbrance of the Debtor's ownership interest in the 'Charging Order Entities' in favor of GE Capital <u>may</u> have arisen as a matter of law prior to the date the District Court for the District of Minnesota entered the 'Charging Order.'"  Gibbs Decl., Ex. F (GE's Responses to Interrogatory Nos. 10 & 11, GE's Response to Request for Admission No. 7), pp. 9-10, 23 (emphasis added); <u>see also</u> Gibbs Decl., Ex. G (Letter from GE's counsel to Debtor's counsel dated January 28, 2011 (hereinafter "January 28 Discovery Letter")); Gibbs Decl., Ex. H (E-mail from GE's counsel to Debtor's counsel dated February 1, 2011 (hereinafter, "February 1 Discovery E-mail")).

GE has failed, however, to provide any legal or factual grounds for its assertion.  Despite repeated statements that it is "investigating" its belief and that it will supplement its discovery responses when information becomes available, <u>see, e.g.</u>, Gibbs Decl., Ex. G (January 28 Discovery Letter), GE has not provided any supplemental facts or information.  Gibbs Decl., ¶ 10.  Thus, as explicitly stated above, "Transfer" as used herein means the creation of the Charging Order Lien by the Charging Order; although GE may not prefer this term and its definition and may make unsupported arguments that its lien arose prior to the Charging Order, the term and definition are clearly stated.

<u>UNDISPUTED FACTS ON WHICH THE
SUMMARY JUDGMENT MOTION IS BASED</u>

1.    The Charging Order placed a lien on the Debtor's ownership interests in the Charging Order Entities.  Gibbs Decl., Ex. B (Charging Order), p. 8; GE's Answer, ¶ 12.

2.    At the time the Charging Order was entered, the Debtor's ownership interests in the Charging Order Entities were property of the Debtor.  <u>See generally</u>, Gibbs Decl., Ex. B (Charging Order).

3.      Upon the debtor's bankruptcy filing, the Debtor's ownership interests in the Charging Order Entities became property of the Debtor's estate.  See Gibbs Decl., Ex. F (GE's Response to Request for Admission No. 2), p. 22.

4.      The Transfer was a transfer of an interest of the Debtor in property.  See Gibbs Decl., Ex. B (Charging Order), p. 8.

5.      The Transfer was made to or for the benefit of GE.  See id., Ex. B, p. 8.

6.      GE was a creditor of the Debtor at the time the Charging Order was entered. GE's Answer, ¶ 19.

7.      The GE Debt and the GE Judgment existed before the Charging Order was entered.  Gibbs Decl., Ex. F (GE's Response to Request for Admission No. 4), p. 22.

8.      The Transfer was made for or on account of an antecedent debt owed by the Debtor to GE.  See Gibbs Decl., Ex. B (Charging Order), p. 8.

9.      According to a Statement of Financial Condition of Debtor, dated March 31, 2010, which was given to GE, the Debtor's net worth at that time was a negative $33 million when the airplane indebtedness referenced in note 9 is considered.  See Gibbs Decl., Ex. I (Statement of Financial Condition of Gerald L. Trooien, dated March 31, 2010 and provided to GE on or around April 8, 2010 (hereinafter, "March 2010 Financial Statement")); Gibbs Decl., Ex. J (Unsworn Declaration of James L. Baillie in Support of Debtor's Objection to GE Capital's Motion to Convert or Dismiss Chapter 11 Case (hereinafter, "Baillie Decl.") [docket no. 137 in Debtor's Bankruptcy Case]), ¶¶ 2 & 3).

10.     On October 25, 2010, the Debtor's liabilities were approximately $284 million. On October 25, 2010, the Debtor's personal assets were approximately $6.46 million.  See Gibbs Decl., Ex. D (Debtor's Bankruptcy Schedules), p 1.

11.     At all times between March 31, 2010 and October 25, 2010 the Debtor's liabilities exceeded the value of his assets.  See Unsworn Declaration of Gerald Trooien in Support of Motion for Summary Judgment, ¶ 2.

12.     The Charging Order was entered on July 28, 2010.  Charging Order, p. 9; Gibbs Decl., Ex. F (GE's Response to Request for Admission No. 12), p. 24.

13.     The Debtor's petition was filed on October 25, 2010 (the "Filing Date").  See Gibbs Decl., Ex. K (Debtor's Petition [docket no. 1 in Debtor's Bankruptcy Case]); Gibbs Decl., Ex. F (GE's Response to Request for Admission No. 13), p. 24.

14.     The Transfer occurred within 90 days before the Filing Date.  See Gibbs Decl., Ex. B (Charging Order); Gibbs Decl., Ex. F (GE's Response to Request for Admission No. 14), p. 24.

15.     Prior to the entry of the Charging Order, the Debtor's ownership interests in the Charging Order Entities were unencumbered, with the exception of the Debtor's ownership interest in JLT Mobil Building Limited Partnership, which was subject to a lien in favor of Bank of America.  See Gibbs Decl., Ex. D (Debtor's Bankruptcy Schedules), p. 17.

16.     Upon the occurrence of the Transfer, GE became a lien creditor as to the Debtor's ownership interests in the Charging Order Entities.  See Gibbs Decl., Ex. B (Charging Order), p. 8.

17.     Aside from the Charging Order Lien, GE has not asserted a specific security interest in any of the Debtor's ownership interests in entities.  See Gibbs Decl., Ex. F (GE's Responses to Interrogatory No. 10 and Request for Admission No. 7), pp. 9 & 23 (asserting that GE is investigating whether the encumbrance of the Debtor's ownership interests in the Charging Order Entities in favor of GE may have arisen prior to the Charging Order, and that GE will

7

supplement its responses); Gibbs Decl., ¶ 10 (stating that GE has not provided any facts or information to supplement its discovery responses).

18.     331 Second Avenue, LLC is owned 100% by Hiawatha Acquisitions, LLC; TriTech .67, LLC; TriTech 1.08, LLC; Midway Warehouse Limited Partnership; and North Prior, L.L.C., each of which is a Charging Order Entity.   Gibbs Decl., Ex. D (Debtor's Bankruptcy Schedules), p. 71; Gibbs Decl., Ex. B (Charging Order), pp. 2-4.

19.     As of the Filing Date, 331 Second Avenue, LLC had an estimated net equity of $750,000.  Id., Ex. D, p. 10.  This estimate of the net equity is based on a liquidation value, i.e., the Debtor's estimate of the value a Chapter 7 trustee could achieve if the trustee was forced to liquidate the entity within six months in the commercial real estate market at the time the bankruptcy case was filed.  See Unsworn Declaration of Douglas W. Kassebaum in Support of Motion for Summary Judgment (hereinafter, "Kassebaum Decl."), ¶ 2.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits submitted in support of the motion, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  In re Yanke, 230 B.R. 374, 376 (8th Cir. B.A.P. 1999); see also Fed. R. Civ. P. 56(c) (made applicable to this adversary proceeding by Fed. R. Bankr. P. 7056).  The initial burden of proof is on the movant to demonstrate that "there is an absence of evidence to support the non-moving party's case."  See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  Once the moving party has met its burden, "the burden shifts to the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine

8

issue for trial." Id. at 324.  The non-moving party may not rely on mere denials or allegations, but must "designate 'specific facts showing that there is a genuine issue for trial.'"  Id. at 322 (quoting Fed. R. Civ. P. 56(e)).

## ARGUMENT

As shown below, there are no material facts in dispute and, as a matter of law, the Transfer to GE should be avoided pursuant to section 547 of the Bankruptcy Code, such that the Charging Order Lien would not be enforceable by GE and would instead be preserved for the benefit of the estate pursuant to 11 U.S.C. § 551.

## I.    THE TRANSFER SHOULD BE AVOIDED PURSUANT TO SECTION 547.

The Bankruptcy Code provides that a debtor-in-possession may avoid any transfer that was:

    (a)     a transfer of an interest of the debtor in property;

    (b)     on account of an antecedent debt owed by the debtor;

    (c)     to or for the benefit of a creditor;

    (d)     made while the debtor was insolvent;

    (e)     within 90 days prior to the commencement of the bankruptcy case;

    (f)     that left the creditor better off than it would have been if the transfer had not been made and the creditor asserted its claim in a Chapter 7 liquidation.

See 11 U.S.C. § 547(b); Wells Fargo Home Mortgage, Inc. v. Lindquist, 592 F.3d 838, 842 (8th Cir. 2010).

Each element is discussed below.  There are no genuine issues of material fact as to any of these elements, all of which are met in this case.  Therefore, the Court should grant the Debtor's motion in its entirety.

### A.     <u>The Transfer Was of an Interest of the Debtor in Property.</u>

The Bankruptcy Code defines "transfer" as, among other things, "the creation of a lien" or "each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with (i) property; or (ii) an interest in property."  11 U.S.C. § 101(54)(A) and (D). As for the interest of the debtor in property:

> While the Bankruptcy Code does not define 'property of the debtor,' the Supreme Court has indicated that 'property of the debtor' subject to the preferential transfer provision is best understood as that property that would have been part of the estate had it not been transferred before the commencement of bankruptcy proceedings.

<u>In re Libby Int'l, Inc.</u>, 247 B.R. 463, 466 (8th Cir. 2000) (citing <u>Begier v. Internal Revenue Service</u>, 496 U.S. 53 (1990)); <u>see also</u> <u>In re Lien</u>, 415 B.R. 715, 721 (Bankr. D. Minn. 2009) ("[T]he thought here is that the [preference avoidance] statute operates as an equalizer, to redress acts of transfer that deprive a later-created bankruptcy estate of assets that otherwise would have entered it when the debtor ultimately filed for bankruptcy.").  To show that a transfer involved an interest of the debtor in property, "it must be shown that the transfer deprived the debtor's estate of something of value which could have been used to satisfy claims of the creditors."  <u>In re Bellanca Aircraft Corp.</u>, 96 B.R. 913, 915 (Bankr. D. Minn. 1989).

The creation of a lien on a debtor's property is a transfer of an interest of the debtor in property.  <u>See, e.g.</u>, <u>In re Schwartz</u>, 383 B.R. 119, 123 (B.A.P. 8th Cir. 2008) (holding that the recording of a mortgage is a transfer of a property interest subject to avoidance as preferential); <u>In re Hoffinger Indus., Inc.</u>, 313 B.R. 812, 817 (Bankr. E.D. Ark. 2004) (describing how creation of a judgment lien resulted in a transfer of an interest of the debtor in property for purposes of § 547).

In this case, the Transfer was the creation of a lien.  <u>See</u> Gibbs Decl., Ex. B (Charging Order), p. 8; GE's Answer, ¶ 12 (admitting that the Charging Order "placed a lien on the Debtor's ownership interests in certain entities).  The creation of a lien is a "transfer" as defined by the Bankruptcy Code.  <u>See</u> 11 U.S.C. § 101(54)(A).  Additionally, as described in the cases cited immediately above, GE's lien was created on the Debtor's property.  Therefore it is a transfer of an interest of the debtor in property.  Specifically, the Debtor's ownership interests in the Charging Order Entities are property of the estate.  <u>See, e.g.</u>, <u>In re Newman</u>, 875 F.2d 668, 670 (8th Cir. 1989); <u>In re Cutler</u>, 165 B.R. 275, 278 (Bankr. D. Ariz. 1994).  GE admits this fact.  Gibbs Decl., Ex. F (GE's Response to Request for Admission No. 2).  However, due to the Transfer, those ownership interests in the estate are now encumbered by the Charging Order Lien; thus, any value realized from the ownership interests would go to GE rather than being available to satisfy the claims of all unsecured creditors.  If the Transfer had not been made, the estate would have received the ownership interests free and clear of GE's lien, which would have provided more value to the estate.  Therefore, the Transfer qualifies as a transfer of an interest of the Debtor in property.

In its Answer, GE denied that the Charging Order "in its entirety constitutes a transfer of property."  GE's Answer, ¶ 18.  When asked in discovery to describe with particularity the facts supporting its denial, GE could not.  Instead, GE stated that "its response to Paragraph 18 of the Complaint speaks for itself, inasmuch as it clarifies an ambiguous allegation in the Complaint and requires no further explanation or support."  Gibbs Decl., Ex. F (GE's Response to Interrogatory No. 13), p. 11.  In response to this motion, GE must come forward with whatever evidence it has.  As it stands, in response to discovery requests going to this very issue, GE has relied only on a mere denial, and has been unable to designate any single specific fact to support

11

its assertion that the Charging Order did not constitute a transfer of property. And GE has never supplemented its discovery response. As such, the Debtor is confident GE has no facts to support the denial in its Answer.

For the reasons stated in this section, the Transfer was a transfer of an interest of the Debtor in property, and GE has provided no substantive support to the contrary. Thus, there are no genuine issues of material fact as to this element.

      **B.**    **The Transfer Was Made For or on Account of an Antecedent Debt.**

The Bankruptcy Code defines "debt" as "liability on a claim." 11 U.S.C. § 101(12). "Claim," in turn, is defined as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, disputed, undisputed, equitable, secured, or unsecured." 11 U.S.C. § 101(5)(A).

"A debt is antecedent for preference purposes if the debt 'was incurred before the allegedly preferential transfer.'" In re Hoffinger Indus., Inc., 313 B.R. 812, 817 (Bankr. E.D. Ark. 2004) (quoting In re Jones Truck Lines, Inc., 130 F.3d 323, 329 (8th Cir. 1997)). A debt is incurred on the date upon which the debtor first becomes legally bound to pay. In re Armstrong, 291 F.3d 517, 522 (8th Cir. 2002).

Due to the Debtor's execution of the guarantee, GE has a claim against the Debtor, because the guarantee gave GE a right to payment from the Debtor on the obligations guaranteed, even if the right to payment was unliquidated and contingent. Because the Debtor is liable for GE's claim against him created by the guarantee, the Debtor owes GE a debt.

The Debtor first became legally bound to pay the GE Debt when he signed the guarantee in November 2006. Thus, the GE Debt was incurred in November 2006, years before the

Transfer occurred in July 2010, making it an antecedent debt.  Additionally, the GE Judgment—based on the GE Debt—was entered in December 2009, also well before the Transfer occurred.

Additionally, GE made it clear that it was seeking the entry of the Charging Order so that it could collect on the GE Judgment in order to satisfy the underlying GE Debt.  For example, in its memorandum of law in support of its motion for a charging order, GE stated that it had a right, "by reason of [its] Judgment against Trooien, to subject Trooien's interests in the Entities" to the Charging Order Lien.  Gibbs Decl., Ex. E (GE Memo for Charging Order), p. 7 (emphasis added).  GE also specified that the reason it was asking that the Charging Order Lien be imposed was "for payment of the Judgment."  Id., Ex. E, p. 8.  In the Charging Order, the district court acknowledged that the Charging Order granted "a lien . . . in favor of and for the benefit of [GE] for payment of the Judgment dated December 21, 2009."  Gibbs Decl., Ex. B (Charging Order), p. 8 (emphasis added).

Further, GE admits that the GE Debt and the GE Judgment existed before the Charging Order was entered, and that GE sought the Charging Order as a means of collecting on the GE Judgment.  Gibbs Decl., Ex. F (GE's Responses to Requests for Admissions Nos. 4, 5), p. 22.

Despite all of this evidence, GE denied in its Answer that the Transfer was made for or on account of an antecedent debt.  See GE's Answer, ¶ 13.  As with the previous element, however, GE has not been able to produce any fact or information showing that a genuine issue of material fact exists as to this element.  For all of these reasons, the Transfer was made for or on account of an antecedent debt owed to GE by the Debtor, and summary judgment is appropriate as to this element.

## C.    **The Transfer Was Made to a Creditor.**

GE admits that it is a creditor of the Debtor.  See, e.g., GE's Answer, ¶ 19.  The Charging

Order specifies that GE was the recipient of the Charging Order Lien.  Gibbs Decl., Ex. B

(Charging Order), p. 8.  Therefore, the Transfer was made to a creditor of the Debtor.

## D.    **The Transfer Occurred While the Debtor Was Insolvent.**

The Bankruptcy Code defines the term "insolvent" to mean a financial condition such

that the sum of an entity's debts is greater than all of the entity's property, at a fair valuation.

11 U.S.C. § 101(32)(A).  Cases discussing insolvency in the context of section 547 note that:

> The Eighth Circuit has specifically held that insolvency results "when the
> aggregate of a debtor's property is not sufficient at a fair valuation to pay his
> debts, which means a fair market price that can be made available for payment of
> debts within a reasonable period of time, and 'fair market value' implies a willing
> seller and a willing buyer."

In re Hoffinger Indus., Inc., 313 B.R. 812, 817 (Bankr. E.D. Ark. 2004) (citing In re Bellanca

Aircraft Corp., 56 B.R. 339, 385 (D. Minn. 1985)).

Section 547 specifically provides that "[f]or the purposes of this section, the debtor is

presumed to have been insolvent on and during the 90 days immediately preceding the date of

the filing of the petition."  11 U.S.C. § 547(f).  "Section 547(f) thereby requires the party against

whom the presumption exists to come forward with some evidence to rebut the presumption."  In

re Bellanca, 56 B.R. at 384.

If a defendant in a preference action either does not offer any evidence to rebut the

presumption of insolvency or the defendant's evidence is insufficient to rebut the presumption,

the debtor can prevail on the insolvency element based on the presumption alone, and does not

have to offer affirmative evidence of insolvency.  See Velde v. Reinhardt, 366 B.R. 894, 898 (D.

Minn. 2007); see also In re Intercontinental Polymers, Inc., 359 B.R. 868, 872 (Bankr. E.D.

Tenn. 2005) ("This presumption [of insolvency] is sufficient to carry [the DIP's] burden of establishing insolvency unless [the defendant] comes forward with some evidence to rebut the presumption."); In re Wallace Bookstores, Inc., 316 B.R. 254, 263 (Bankr. E.D. Ky. 2004) (holding that the defendant's evidence was insufficient to rebut the presumption of insolvency, therefore, "the presumption is sufficient as a matter of law to establish [the debtor's] insolvency at the time of the transfers"); In re Rose, 86 B.R. 193, 195 (Bankr. W.D. Mo. 1988) ("The Court finds the [defendants] did not present sufficient competent evidence to rebut the presumption of insolvency. Since the presumption was not rebutted, the trustee was not required to present additional evidence of insolvency.").

Here, GE cannot rebut the presumption of insolvency.[2]  If GE claims that the Debtor was not insolvent at the time the Transfer was made, it must rebut the statutory presumption of insolvency; it must come forward with some evidence that, during the 90 days before the Filing Date, the sum of the Debtor's debts was not greater than all of the Debtor's property, at a fair valuation. As of the date this motion was filed, GE had not produced any such evidence. Gibbs Decl., ¶ 14. It appears that GE cannot rebut the presumption of insolvency; therefore, summary judgment is appropriate as to this element.

Moreover, even if GE could rebut the presumption, the Debtor has produced evidence showing that his liabilities exceeded the value of his assets on July 28, 2010, the date of the Transfer. Specifically, the Debtor notes that in early April 2010 he provided GE with the March 2010 Financial Statement, which indicates that, when the Aircraft Liabilities are taken into account, the Debtor was insolvent as of March 31, 2010. See Gibbs Decl., Ex. I (March 2010 Financial Statement); Gibbs Decl., Ex. J (Baillie Decl.), ¶¶ 2 & 3. Further, the Debtor's

---

[2]  Again in response to discovery going to this issue, GE produced no documents or information showing that the Debtor was not insolvent on July 28, 2010.

bankruptcy schedules show that he remained insolvent after the date the Transfer occurred, as he was insolvent as of the Filing Date.  See generally, Gibbs Decl., Ex. D (Debtor's Bankruptcy Schedules).  And the Debtor has stated that at all times between March 31, 2010, and October 25, 2010, his liabilities exceeded his assets.  Trooien Decl., ¶ 2.

### E.  The Transfer Was Made Within 90 Days Prior to the Commencement of the Case.

In order for a transfer to a non-insider to be avoidable, the transfer must have been made "on or within 90 days before the date of the filing of the petition."  11 U.S.C. § 547(b)(4)(A).  Not only has GE has admitted that the Charging Order was entered within 90 days before the Filing Date, Gibbs Decl., Ex. F (GE's Response to Request for Admission No. 14), p. 24, but a calculation confirms that the Transfer was made within 90 days prior to the Filing Date.

In computing the 90-day period, most courts exclude either the date of the petition or the date of the transfer due to Rule 9006(a) of the Federal Rules of Bankruptcy Procedure, which states that "the day of the act, event, or default from which the designated period of time begins to run shall not be included."  See, e.g., In re Gossett, 369 B.R. 361, 369 (Bankr. N.D. Ill. 2007).  There is some disagreement among courts whether the "event" is the transfer and you count forward from the date of the transfer, or whether the "event" is the filing, and you count backwards from the petition date.  Compare In re Wilmington Nursery Co., Inc., 36 B.R. 813, 816 (Bankr. E.D.N.C. 1984) (calculating by counting forward from the date of the transfer, excluding the date of the transfer but including the petition date) with In re Nelson Co., 959 F.2d 1260 (3d Cir. 1992) (counting backwards from the date of the petition, excluding the petition date but including the date of the transfer).

Regardless of the counting method used—and even if both the filing date and transfer date are counted—however, the result here is the same: the Transfer occurred on or within 90

days before the date of the filing of the petition.  The Debtor's petition was filed on October 25,

2010.  The Transfer occurred on July 28, 2010.  Starting on July 28, 2010 as day one and

counting forward, the 90th day is October 25, 2010.  Starting on October 25, 2010 as day one

and counting backwards, the 90th day is July 28, 2010.  If one of either the date of the Transfer

or the Filing Date are not counted, then the Transfer was made 89 days before the Filing Date.

Thus, by any method of calculation, the Transfer falls within the timing requirements.

  As described above, GE asserts that its encumbrance on the Charging Order Entities may

have arisen prior to the entry of the Charging Order, such that its lien on the Charging Order

Entities arose more than 90 days before the Filing Date.  However, GE has provided no support

for its assertion that its lien arose before the entry of the Charging Order, and has admitted that

the Charging Order was entered within 90 days before the Filing Date.  Thus, there are no

genuine issues of material fact as to this element.

  **F.**  **The Transfer Left GE Better Off Than it Would Have Been in a Hypothetical Chapter 7 Liquidation.**

  For a preference to be avoidable under section 547 of the Bankruptcy Code, it must have

enabled a creditor to receive more than the creditor would receive if:

  (A)  the case were a case under Chapter 7;

  (B)  the transfer had not been made; and

  (C)  the creditor received payment of the debt to the extent provided by the Bankruptcy Code.

See 11 U.S.C. § 547(b)(5).  To evaluate this element, courts consider whether the creditor "will

receive more by reason of the transfer than it would have received in a hypothetical liquidation

under Chapter 7" if the transfer had not been made.  In re Alexander, 219 B.R. 255, 257 (Bankr.

D. Minn. 1998).  Here, the Transfer left GE better off than it would have been in a hypothetical

Chapter 7 liquidation because: (1) the Transfer made GE a secured creditor such that GE obtained all the rights that accompany secured creditor status, and (2) GE would receive a greater financial return as a secured creditor pursuant to the Transfer than it would as an unsecured creditor in a Chapter 7 liquidation.

### 1.   GE's Change in Status From Unsecured to Secured Satisfies This Element.

Courts hold that if a transfer causes a creditor to change from being an unsecured creditor to a secured creditor, and there is not enough money in the estate to pay all unsecured claims in full, then the creditor received more from the transfer than it would in a hypothetical Chapter 7 liquidation.  As one court stated:

> [I]t is clear that the unsecured creditors in this case will receive less than a 100% distribution.  Because of this, the Court finds that as a result of the creation of the liens, [the creditor] received more than she would receive if the transfer had not been made, the case were a chapter 7 proceeding, and [the creditor] received payment on her claims as provided for in the bankruptcy code.

In re Hoffinger Indus., Inc., 313 B.R. 812, 827 (Bankr. E.D. Ark. 2004);  see also Wells Fargo Home Mortgage, Inc. v. Lindquist, 592 F.3d 838, 844-45 (8th Cir. 2010) (holding that a transfer to a creditor which erroneously caused the debtor to list the creditor as secured allowed the creditor to receiver more than it would have in a hypothetical Chapter 7 liquidation); In re Schwartz, 383 B.R. 119, 124 (B.A.P. 8th Cir. 2008) (describing how a creditor is in a better position following the granting of a security interest because it was previously an unsecured creditor, but the security interest allowed it to receive more than other unsecured creditors); In re RDM Sports Group, Inc., 250 B.R. 805, 815 (Bankr. N.D. Ga. 2000) (holding that, when a creditor obtained a lien which elevated the creditor's status from an unsecured creditor to that of a secured creditor, the "lien permitted [the creditor] to receive more than it would have received as an unsecured creditor in a hypothetical Chapter 7 proceeding"); In re Alexander, 219 B.R. at

257 (describing how the parties agreed that the perfection of a security interest was a transfer, and that the creditor received more by reason of the secured status resulting from the transfer than it would have received in a hypothetical liquidation under Chapter 7 had the transfer not been made); In re Morken, 199 B.R. 940, 963-64 (Bankr. D. Minn. 1996) (holding that the debtor's grant of a security interest put the creditor "in a much better position than it would have been asserting an unsecured claim in a chapter 7 liquidation," and that the security interest was an avoidable preference); In re Klingbeil, 119 B.R. 178, 183 (Bankr. D. Minn. 1990) (holding that a transfer elevating a creditor's rights in property of the debtor "from those of an unsecured creditor to those of a fully-secured creditor . . . enabled [the creditor] to receive more in a hypothetical chapter 7 liquidation than it would have otherwise" because it established the creditor's secured rights against all comers).

Here, the Transfer elevated GE's status from an unsecured creditor to a secured creditor. As a result, GE received all the rights that come along with secured creditor status, such as the right to demand certain payments, the right to foreclose, and the right to get paid first from any equity in its security in a bankruptcy context. Because the Debtor's liabilities far outweigh the Debtor's assets, the unsecured creditors in this case will not be paid in full, making the right to be paid first from equity in collateral a particularly important benefit. Thus, GE's change in position to a secured creditor enables GE to receive more than it would have if the transfer had not been made and GE was an unsecured creditor in a Chapter 7 case. See, e.g., In re Schwartz, 383 B.R. at 124. As described above, this elevation from unsecured to secured status alone puts GE in a better position than it would be as an unsecured creditor in a Chapter 7 liquidation, and thus satisfies this element.

2.      **GE Would Receive a Greater Financial Recovery from the Transfer.**

As shown below, the Debtor's interests in the Charging Order Entities have value, and GE would recover more of that value as a secured creditor than it would without its lien in a chapter 7 liquidation.

a.      **There is equity in at least some of the Charging Order Entities.**

There are at least three ways to value the Debtor's interests in the Charging Order Entities, each of which show that there is equity in at least some of the Charging Order Entities. The first methodology examined is a liquidation valuation methodology.    Using this methodology, and using only one example, shows that there is equity in at least some of the Charging Order Entities.

Specifically, 331 Second Avenue, LLC is entirely owned by five of the Charging Order Entities.    Gibbs Decl., Ex. D (Debtor's Bankruptcy Schedules), p. 71; Gibbs Decl., Ex. B (Charging Order), pp. 2-4.    Attachment B-13/14 to the Debtor's Bankruptcy Schedules shows that 331 Second Avenue, LLC has approximately $750,000 of net equity, when using a liquidation value.    Thus, the five owners of 331 Second Avenue, LLC have value because the entity they jointly own has value.

Moreover, if Debtor's assets form the basis for a plan of reorganization, and a going-concern valuation is used—rather than a liquidation value used above and as shown on Attachment B-13/14—the Debtor's and Manchester's analysis shows that there would be equity in the Debtor's ownership interests in certain of the Charging Order Entities, or subsidiaries from which the value would flow through the owner Charging Order Entities into the Debtor's equity. See generally, Gibbs Decl., Ex. L (Unsworn Declaration of Patty Smith [docket no. 140 in Debtor's Bankruptcy Case]) (describing the positive cash flows of certain entities and the

potential for improved operations and increases in value through negotiations with lenders); Gibbs Decl., Ex. M (Unsworn Declaration of Gerald Trooien in Support of Debtor's Objection to GE Capital's Motion to Convert or Dismiss Chapter 11 Case [docket no. 139 in Debtor's Bankruptcy Case]).

Third, the Debtor's Periodic Report Regarding Value, Operations and Profitability of Entities in Which the Estate of Gerald Trooien Holds a Substantial or Controlling Interest shows that, based on book values—a third methodology of valuation, rather than going concern or a liquidation-based valuation method—there is equity in the Debtor's ownership interests in certain Charging Order Entities, and may be value in entities not subject to the Charging Order but which are owned, in whole or part, by the Charging Order Entities.  For example, based on book value, there is $262,493.25 worth of owner's equity in Bren Road, L.L.C., one of the Charging Order Entities.  See Gibbs Aff., Ex. N (Excerpts from Debtor's Periodic Report Regarding Value, Operations and Profitability of Entities in Which the Estate of Gerald Trooien Holds a Substantial or Controlling Interest [docket no. 143 in Debtor's Bankruptcy Case]), pp. 70 & 80.

In response to this analysis, GE likely will point out that attachment B-13/14 to the Debtor's Bankruptcy Schedules lists that the estimated net equity for each of the Charging Order Entities as $0.00.  As noted above, however, that estimation of net equity is based solely on the Debtor's estimate of the value a Chapter 7 trustee could obtain if the trustee was forced to liquidate the entity within six months.  Kassebaum Decl., ¶ 2.  And even using that methodology shows that certain Charging Order Entities have value.

Finally, GE's actions indicate that it believes there is equity in at least some of the Charging Order Entities.  Not only has GE made a motion to extract money from certain of the

Charging Order Entities, Gibbs Decl., Ex. O (GE's Motion for Civil Contempt and Conversion (hereinafter, the "Enforcement Motion") [docket no. 59 in the District Court Case]), and continues to assert its right to extract such money, see, e.g., Gibbs Decl., Ex. P (GE's Motion for Miscellaneous Relief or, in the Alternative, Relief from the Automatic Stay [docket no. 7 in the Debtor's Bankruptcy Case]), but GE has also continued to fight the Debtor in this adversary proceeding and vigorously disputes that its lien is avoidable.  See generally, Gibbs Decl., Ex. F (GE's Discovery Responses).  If GE did not believe that there was value in the Charging Order Entities, it would have no reason to fight so hard and to incur so many expenses in order to maintain its lien on the Charging Order Entities.

### b.    GE would receive the benefit of the equity in the Charging Order Entities.

Because the Debtor's ownership interests in the Charging Order Entities are property of the estate, any equity in the Charging Order Entities would be among the assets used to fund payments to creditors.  If the Transfer is not avoided and GE retains its Charging Order Lien, a distribution of this equity would go to GE rather than into the pot of funds used to pay unsecured creditors.  Because GE would be paid directly from this equity, rather than merely getting a share of it as an unsecured creditor, GE would receive more as a result of the Transfer than it would in a Chapter 7 liquidation.

A simple illustration using the 331 Second Avenue, LLC, example mentioned above demonstrates the point that GE would receive a greater benefit with its lien than without it in a chapter 7 liquidation.  Attachment B-13/14 to the Debtor's Bankruptcy Schedules shows that, using a liquidation value, 331 Second Avenue, LLC, has an estimated net equity of $750,000. 331 Second Avenue, LLC is entirely owned by five of the Charging Order Entities, so that, in a liquidation, such estimated net equity would flow through to the Charging Order Entities,

resulting in equity in the Debtor's ownership interests in those Charging Order Entities. If GE

retains the Transfer, it would hold a security interest in that $750,000 of equity, so that amount

would be distributed to GE rather than being available for distribution to unsecured creditors.

GE's judgment would be reduced by that amount, and its remaining claim would then become

another in the claims of the unsecured creditors. Consequently, GE would also receive its share

of the unencumbered funds distributed to unsecured creditors for its deficiency claim.

If, however, the Transfer had not occurred, then GE would be a general unsecured

creditor and there would be no lien on the $750,000. As a result, the $750,000 would go into the

pot to be divided among all the unsecured creditors including GE, such that GE would get only a

fraction of the $750,000 through its share of the distribution to unsecured creditors. GE would

also get its share of whatever other funds are available for distribution to unsecured creditors, but

it is clear that the amount available to unsecured creditors in such a liquidation would be far less

than 100%, so GE would not be paid in full.

Thus, with the Transfer, GE would receive the $750,000 equity in 331 Second Avenue,

LLC, plus its share of the unsecured creditors' distribution. Without the Transfer, GE would

receive only its share of the unsecured creditors distribution, which would include only a fraction

of the $750,000. This example shows that, if it retains the secured status it received through the

Transfer, GE would receive a greater financial return than in a Chapter 7 liquidation, particularly

in this case where the unsecured creditors will not be paid in full.

As a result, the final element of section 547 is met, because the Transfer leaves GE

better off than it would have been without the Transfer in a hypothetical Chapter 7 liquidation.

Furthermore, GE is not able to raise a genuine issue of material fact as to this element; when

asked to admit that it would receive more from the Debtor's estate if it was a secured creditor

than if it was an unsecured creditor, GE states that it can neither admit nor deny that statement because it "lacks sufficient information to respond to this Request at this time.  Among other things, the Plaintiff has not yet responded to GE Capital's discovery requests."  Gibbs Decl., Ex. F (GE's Response to Request for Admission No. 17), p. 25.  GE has since received Debtor's discovery responses, but it has not supplemented this response.  See Gibbs Decl., ¶ 10.  Thus, GE does not have any information which raises a fact question on this issue, and summary judgment is appropriate as to this element.

II.    **IF NECESSARY, IN ADDITION TO THE AUTOMATIC PRESERVATION OF THE CHARGING ORDER LIEN UNDER SECTION 551, THE DEBTOR SHOULD BE ABLE TO RECOVER THE TRANSFER PURSUANT TO SECTION 550.**

A.    **Automatic Preservation of an Avoided Lien for the Benefit of the Estate Under Section 551.**

The Bankruptcy Code provides that "[a]ny transfer avoided under section . . . 547 . . . of this title . . . is preserved for the benefit of the estate but only with respect to property of the estate."  11 U.S.C. § 551.  Such preservation under section 551 occurs automatically and requires neither a separate request for such relief nor a court order.  In re Vondall, 352 B.R. at 199; see also In re Sickels, 392 B.R. 423, 427 (Bankr. N.D. Iowa 2008) (describing how the legislative history shows that Congress intended that an avoided nonpossessory lien would automatically be preserved pursuant to § 551).  Thus, when a lien is avoided under section 547, section 551 automatically causes the lien to transfer from the creditor who held the lien to the trustee or the debtor-in-possession for the benefit of the estate.  In re Vondall, 352 B.R. at 193 (holding that, pursuant to section 551, the creditor "therefore loses its secured interest to the trustee and can no longer collect the value of its secured claim from the property").

As a result, the trustee or the debtor-in-possession "steps into the shoes of the [creditor] and acquires the same rights that the [creditor] held" in relation to the lien.  In re Arzt, 252 B.R. 138, 142 (B.A.P. 8th Cir. 2000).  Thus, a trustee who has succeeded to the rights of a lienholder following the avoidance and preservation of a lien holds the benefits of the lien, for example, the lienholder's right to enforce the lien if the debtor fails to make required payments.  See, e.g., In re Wyatt, 440 B.R. 204, 212 (Bankr. D.C. 2010); see also In re Bremer, 408 B.R. 355, 360 (B.A.P. 10th Cir. 2009) (describing how a trustee succeeds to the creditor's lien-related rights such as the right to foreclose on the collateral).

In this case, if the Court avoids the Transfer pursuant to section 547, the Charging Order Lien would be preserved for the benefit of the estate pursuant to section 551 such that the Charging Order Lien would automatically transfer from GE to the Debtor.  In addition, the Debtor would acquire the same rights that GE held in relation to the Charging Order Lien, such as the right to receive payments pursuant to the Charging Order Lien and the right to choose whether to take actions to enforce the Charging Order Lien, such as choosing whether to proceed with the Enforcement Motion.

**B.**     **Recovery Following an Avoided Transfer Pursuant to Section 550.**

In addition to automatic preservation pursuant to section 551, if a transfer is avoided under section 547, the debtor-in-possession may recover, for the benefit of the estate, the property transferred, or the value of such property, from the initial transferee.  See 11 U.S.C. § 550(a).  Generally, "[a]lthough the bankruptcy court has discretion under section 550(a) to remedy a preferential transfer by ordering either the property or its value returned to the bankruptcy estate, the court does not have discretion to order neither remedy."  In re Vondall, 352 B.R. 193, 199-200 (Bankr. D. Minn. 2006).  However, recovery under section 550 is only

necessary when the remedy of avoidance under section 547 is inadequate.  In re Sickels, 392 B.R. 423, 426 (Bankr. N.D. Iowa 2008).

Specifically, recovery under section 550 is unnecessary when the "avoidance of a transfer is sufficient to undo the preferential transfer and make the estate whole."  Id.  One such instance is the avoidance of a lien.  Id.; In re DLC, Ltd., 295 B.R. 593, 602 (B.A.P. 8th Cir. 2003) (describing how relief under § 550 may not be necessary because "sometimes, as in the case of the avoidance of the grant of a security interest, avoidance is sufficient"); In re Sickels, 392 B.R. at 427 ("Avoidance of the lien constitutes a complete recovery for the bankruptcy estate.  No further recovery is allowed or necessary to remedy the avoidable transfer or put the estate back into the financial condition Debtors enjoyed prior to the transfer.").

In the case of the avoidance of a lien, avoidance under section 547 is generally sufficient to recover the transferred property, without further relief under section 550, due to the automatic preservation of the lien for the benefit of the estate pursuant to section 551.  See In re Vondall, 352 B.R. 193, 200 (Bankr. D. Minn. 2006).

The Debtor believes that this is one instance in which relief under section 550 may not be necessary.  Specifically, the avoidance of the Transfer under section 547 would avoid GE's security interest, and would—by operation of section 551—automatically result in the Charging Order Lien, along with its attendant rights, being preserved for the benefit of the estate.  Thus, the property transferred—the Charging Order Lien and all the rights which accompany it, including the right to enforce the Charging Order Lien—would automatically transfer from GE to the Debtor, and no recovery under section 550 would be necessary.

Out of an abundance of caution, however, the Debtor includes his request for relief under section 550 in case any party argues that the Charging Order Lien, when avoided under section

547, would not redound to the benefit of the estate pursuant to section 551. If recovery under section 550 is necessary, it is proper because the Transfer will be avoided under section 547, and GE is the initial transferee of the Transfer. <u>See</u> Gibbs Decl., Ex. B (Charging Order), p. 8. Therefore, in the event that the Transfer is avoided but the Court holds that the Charging Order Lien and its accompanying rights are not automatically preserved for the benefit of the estate pursuant to section 551, the Debtor requests that the Court order that the Charging Order Lien is recoverable under section 550.

**III.    IF NECESSARY, THE DEFENDANTS' CLAIMS SHOULD BE DISALLOWED PURSUANT TO SECTION 502(d).**

The Bankruptcy Code provides that a court shall disallow the claim of any entity from which property is recoverable under section 550 or that is a transferee of a transfer avoidable under section 547, unless such entity has turned over such property for which such entity is liable under section 550. <u>See</u> 11 U.S.C. § 502(d). If the Transfer is avoided under section 547 and GE refuses to desist in claiming to be a secured creditor, or if the Court finds that the property is recoverable under section 550, the Debtor requests that the Court disallow any claim by GE unless and until GE ceases claiming secured status or turns over the recoverable property.

## <u>CONCLUSION</u>

For all the foregoing reasons, the Debtor requests that his motion for summary judgment

be granted in its entirety.

Respectfully submitted,

Dated:  February 22, 2011

*/s/ Cynthia A. Moyer*

Cynthia A. Moyer (#211229)
Sarah M. Gibbs (#390238)
**FREDRIKSON & BYRON, P.A.**
200 South Sixth Street, Suite 4000
Minneapolis, MN 55402-1425
Tel. (612) 492-7000
Fax (612) 492-7077
cmoyer@fredlaw.com
sgibbs@fredlaw.com

ATTORNEYS FOR PLAINTIFF

4852643

28

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:                                                    Chapter 11 Bankruptcy

Gerald Trooien,                                           Case No. 10-37695

          Debtor.

_____

Gerald Trooien,

          Plaintiff,

                                        Adv. No. 10-03227

    v.

General Electric Capital Corporation and
GECPAC Investment II, Inc.

          Defendants.

---

## CERTIFICATE OF SERVICE

---

      Sarah M. Gibbs, under penalty of perjury, states that on February 22, 2011, she caused to be served the following:

1.     Plaintiff's Notice of Hearing and Motion for Summary Judgment;

2.     Plaintiff's Memorandum of Law in Support of His Motion for Summary Judgment;

3.     Unsworn Declaration of Gerald Trooien in Support of Motion for Summary Judgment;

4.     Unsworn Declaration of Sarah M. Gibbs in Support of Motion for Summary Judgment;

5.     Unsworn Declaration of Douglas W. Kassebaum in Support of Motion for Summary Judgment;

6.     Proposed Order; and

7.     Certificate of Service

Gerald Trooien Service List
Adv. No. 10-03227
Service by ECF or e-mail.

by sending true and correct copies to all parties on the attached service list as indicated therein.

Dated:  February 22, 2011                    */s/ Sarah M. Gibbs*
                                             Sarah M. Gibbs

4882801/049348.0888

Gerald Trooien Service List
Adv. No. 10-03227
Service by ECF or e-mail.

**DEBTOR**
Gerald Trooien
JLT Group Inc.
10 River Park Plaza, #800
St. Paul, MN  55107-1222
jtrooien@jltgroupinc.com

*GECPAC Investment II, Inc. and*
*General Electric Capital Corp.*
c/o Megan M. Kennedy, Esq.
Jeffrey W. Jones, Esq.
Paul L. Ratelle, Esq.
Fabyanske, Westra, Hart & Thomson,
P.A.
800 LaSalle Avenue, #1900
Minneapolis, MN  55402
mkennedy@fwhtlaw.com
jjones@fwhtlaw.com
pratelle@fwhtlaw.com

*GECPAC Investment II, Inc. and*
*General Electric Capital Corp.*
Aaron B. Chapin, Esq.
Reed Smith, LLP
10 South Wacker Drive, 40th Floor
Chicago, IL  60606
achapin@reedsmith.com

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:                                                                    Chapter 11 Bankruptcy

Gerald Trooien,                                                           Case No. 10-37695

                        Debtor.

_____

Gerald Trooien,

                        Plaintiff,
                                                                          Adv. No. 10-03227
        v.

General Electric Capital Corporation and
GECPAC Investment II, Inc.

                        Defendants.

---

**ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT**

---

        This case is before the court on the Plaintiff's Motion for Summary Judgment.  Based on

the arguments of counsel, all the files, records and proceedings herein, the court being fully

advised on the premises,

        IT IS HEREBY ORDERED:

        1.        The Plaintiff's Motion for Summary Judgment is granted.

        2.        The lien in favor of Defendants on the Plaintiff's ownership interests in the

entities listed in the Order dated July 28, 2010 by the United States District Court for the District

of Minnesota entered in case no. 09-cv-01200 [docket no. 44] is avoided pursuant to 11 U.S.C.

§ 547, and is automatically preserved for the benefit of the estate by operation of 11 U.S.C.

§ 551.

LET JUDGMENT ENTER ACCORDINGLY.


Dated:                                    _____

                                          Nancy C. Dreher
                                          United States Bankruptcy Judge